[No. 8734.  Department One.  September 19, 1910.]

A. Simons, *Respondent*, v. Charles Cissna, *Appellant*.[1]

Fraud—Misrepresentation—Solvency—Liability.  General mis-
representations as to the solvency of a corporation not confined to
any specific work under a contract, renders the defendant liable to
plaintiff for loss thereby sustained in the performance of the con-
tract, including loss on work outside the contract which the parties
thereto treated as being within the contract.

Same—Solvency—Evidence—Sufficiency.  The evidence is suf-
ficient to show the insolvency of a corporation, where but $5,000 of
its capital stock was paid in, all of which was used to make an
initial payment on a real estate contract, and it had no title or prop-
erty with which to meet its obligations.

Same—Instructions.  An instruction in an action for misrepre-
senting the solvency of a corporation, correctly stating the rule of
liability, is not prejudicially erroneous by reason of the addition of
the clause that a person making such representations cannot be
heard to say that he was a person upon whom no reliance should
have been placed.

Same.  In an action for misrepresenting the solvency of a com-
pany, whether the statement of defendant that plaintiff "could not
lose by contracting" with the company was a mere opinion and not
actionable, depends upon the context and other representations made
at the time respecting the solvency of that company; and it is there-
fore proper to refuse to instruct that it was a mere opinion or pre-
diction.

Same—Insolvency—Evidence—Admissibility.  In an action for
misrepresenting the solvency of a mill company, court proceedings
begun against the company for the recovery of the land on which
the mill was situated, afterwards settled by removal of the mill and
surrender of the land, in which action the defendant represented the
company, are admissible on the question of the solvency of the com-
pany, and defendant's knowledge and connection with its business
affairs.

Same.  Evidence that the husband of a stockholder in a corpora-
tion owns property is not admissible upon an issue as to the solvency
of the stockholder.

Evidence—Trial—Admissibility.  The admissions of a party
against interest are admissible as substantive independent evidence
on the opponent's case in chief.

[1]Reported in 110 Pac. 1011.

SAME—DAMAGES—EVIDENCE—SUFFICIENCY. Where, in an action for misrepresenting the solvency of a corporation, the plaintiff, while unable to segregate all the items of damages resulting therefrom in the performance of a contract, is able to state the entire cost of all the work and what proportion of it was done under the contract, there is sufficient evidence to support a verdict for substantial damages, under an instruction that plaintiff could only recover for loss sustained on work under the contract.

Appeal from a judgment of the superior court for Whatcom county, Kellogg, J., entered September 25, 1909, upon the verdict of a jury rendered in favor of the plaintiff, in an action for fraud. Affirmed.

*Hadley, Hadley & Abbott* and *Hurlbut & Neal*, for appellant.

*White & Peringer* and *Neterer, Pemberton & Sather*, for respondent.

FULLERTON, J.—This cause was before this court at its January session, 1909, on an appeal from a judgment rendered against Cissna, the present appellant, and his codefendant, the Home Security Savings Bank. The judgment was reversed as to both defendants, and ordered dismissed as to the Home Security Savings Bank, and retried as to the defendant Cissna. The mandate of the court was carried out, and the second trial resulted in a verdict and judgment against the defendant Cissna in the sum of $7,314.80 and costs. This is an appeal from the last mentioned judgment. The former opinion of this court is reported in *Simons v. Cissna*, 52 Wash. 115, 100 Pac. 200. In the opinion will be found a full statement of the facts giving rise to the controversy between the parties and the nature of the action. It is sufficient here, therefore, to say that the action is one brought to recover for false and fraudulent representations made by the appellant, Cissna, to the respondent as to the solvency of a corporation known as the American Mill & Timber Com-

pany, whereby the defendant was induced to enter into a logging contract with that company, which resulted in a loss to him owing to the falsity of the representations.

Taking up the assignments of error in the order in which the appellant presents them, the first to be noticed is the assignment that the court erred in refusing to grant the appellant's motion for a directed verdict, made at the trial after all of the evidence had been given to the jury, but prior to the submission of the case to them. It appeared from the evidence that a portion of the expenditures for which the respondent claimed damages had been made in the construction of skid roads and in logging on lands not owned by the American Mill & Timber Company, with whom the respondent had his contract, but on lands of other owners and on which the respondent was a trespasser. It appeared also that the respondent was not able to state with exactness what sums had been expended in constructing these skid roads and in doing the logging, nor other than in a general way what proportion this work bore to the whole work on which the sum total of his losses were based. It is argued that it could not have been within the contemplation of the parties at the time the representations were made that the respondent would commit a trespass, and hence there can be no recovery for losses suffered thereby; and since there was no segregation of the recoverable portion of the losses from those not recoverable, there can be no recovery at all, other than perhaps a recovery of nominal damages.

But aside from the fact that we think the evidence sufficient to warrant an apportionment by the jury, there is another reason why the objection is not well taken. There was evidence tending to show that the skid roads built on the lands other than those described in the contract were necessary to a successful performance of the contract and were built after a consultation with the mill company, and after the respondent had been assured by the mill company that he had a lawful

right to build them. It was shown, also, that the logging was done on lands on which the mill company claimed the timber, and after the respondent had been directed by the mill company to cut it as being within the contract. In other words, the work was not performed by the respondent as something additional to the original contract, but in the due performance of that contract. Nor were the appellant's representations confined to the mill company's ability to finance a particular undertaking; on the contrary, he represented that the mill company had resources of specific values, and was able to take care of its contracts generally. Since, therefore, the appellant did not confine his representations to the ability of the mill company to pay for the performance of any specific work, and the parties have treated this work as being within the terms of the contract, we think appellant cannot be heard to assert to the contrary; he must be held to have guaranteed ability to perform the contract on the part of the mill company, as the parties themselves should construe it.

A second reason urged in support of this assignment of error is that the evidence fails to show insolvency on the part of the mill company at the time the representations were made by the appellant. But without entering upon an extended review of the evidence, we are of the opinion that insolvency was shown. It will be remembered that but $5,000 of the capital stock of the mill company was paid in, and that this sum was used in making the initial payment on the property described in the respondent's contract, and which the mill company had contracted to purchase from the Home Security Savings Bank; that by the contract of purchase the mill company acquired no title to the property, but only an agreement on the part of the vendor to convey on certain conditions, to become forfeited at the option of the vendor on the failure of the mill company to comply with the conditions. In fine, after the mill company had paid the initial sum on the purchase price of the property for which it contracted, it had no tangible property whatever, but only a prospective

interest which it subsequently forfeited. At no time did it have money or property with which it could meet its obligations when they fell due, and this is the test of solvency for an individual or business concern engaged in trade. We think, therefore, that the court did not err in refusing to sustain the challenge to the sufficiency of the evidence.

In its charge to the jury the court instructed them as follows:

"You are further instructed, gentlemen of the jury, that where a person makes representations of the financial standing or condition of another person or company, of such character and under such circumstances as to justify their belief by a reasonably prudent man, such person to whom the representations are made being ignorant of the truth, and acting upon such representations to his injury, he may recover any damages which he may have sustained by reason thereof, although he might have by reasonable diligence have ascertained the solvency of the person or company recommended, and the person making such representations cannot be heard to say he is a person upon whom no reliance can be placed."

The appellant assigns error on the last clause of this instruction, contending that it is inapplicable to any issue in the cause, is misleading, and in its nature highly prejudicial. But while we think the court might well have omitted the clause complained of, we cannot think it reversible error. It is manifest that the court was merely attempting to emphasize and make more clear to the jury what he had previously said in the instruction; namely, that one who fraudulently makes statements that misleads another to his prejudice cannot be heard to say, in defense of his action, that the person misled ought not to have relied on his statements merely because means of discerning their falsity were within his reach. While the thought might have been more happily expressed, it is not erroneously expressed, nor do we think in a manner prejudicial to the appellant. *Simons v. Cissna*, 52 Wash. 115, 119, 120, 100 Pac. 200.

The appellant assigns error on the refusal of the court to give the following instruction:

"You are instructed that the amended complaint in this case charges the defendant, Charles Cissna, with having told the plaintiff 'That he could not lose by contracting with the American Mill & Timber Company'; and you are instructed that under the law such a statement is a mere opinion, prediction or promise of a future condition of things, and is not such a representation as would entitle the plaintiff to rely thereon; and if you find from a preponderance of the evidence that such a representation was made, then you are instructed that such a statement constitutes no basis for recovery by plaintiff in this action, and you must disregard it."

If the sentence here referred to had stood as an independent allegation of the complaint unconnected with anything else, there would be some foundation for the appellant's claim that it was a mere expression of an opinion which the jury should have been warned against treating as an actionable representation. But the sentence was used in connection with other representations made as to the solvency of the mill company as a part of one general statement. The jury were, therefore, entitled to consider the statement as a whole, and it was their province to say whether the statement, when connected with the context, was a representation of solvency or only an expression of an opinion.

The court admitted in evidence, over the objection of the appellant, the complaint, affidavit, and motion for a restraining order in an action begun by one Saling against the American Mill & Timber Company and the Home Security Savings Bank, the action having for its purpose the recovery of the land upon which the sawmill of the mill company was constructed; the action having been discontinued after the removal of the mill from the property claimed. It is urged that these instruments tended to prove no issue in the case, and were, on the other hand, highly prejudicial because of the

recitals they contained.  But we think they were admissible as
tending to prove the insolvency of the mill company.  There
was testimony introduced in connection with the documents
tending to show that the action therein mentioned was settled
by an agreement between the plaintiff and the mill company,
the latter being then represented by the appellant, by which
the mill company agreed to remove the mill from the disputed
premises ; that the mill was so removed and was not thereafter
operated by the mill company.  This evidence not only tended
to prove the insolvency of the mill company, but also the ap-
pellant's connection with its business affairs, and hence knowl-
edge on his part of its insolvent condition.

In the course of the examination of the appellant, he was
interrogated regarding the financial responsibility of certain
of the stockholders of the American Mill & Timber Company,
and among other things, stated concerning one Julia Hooker,
who owned an unpaid subscription to the stock of that com-
pany of $1,500 that her "husband had 160 acres of timber
land just across the line......in British Columbia." This
answer was stricken by the court on motion of the respondent,
and its action in so doing is assigned as error.  But the court
did not err in this regard.  Evidence that the husband owns
property situated in another jurisdiction is not of itself evi-
dence of the solvency of the wife.  Whether a person is solvent
or not is a question of fact, and when material must be es-
tablished as a fact.  It is not to be inferred from legal pre-
sumptions.

The court permitted the witness Sather, over objection, to
testify to certain statements made by the appellant concern-
ing the injunction suit before mentioned, while the appellant
was testifying in another action.  It is urged against this
that it could only have been proper in rebuttal, and then only
after laying a foundation for impeachment.  But counsel
have overlooked the fact that the appellant is a party to the
present action, and that the admissions of a party against
interest constitute substantive independent evidence and are

admissible against him as part of his opponent's case in chief. *Hart v. Pratt*, 19 Wash. 560, 53 Pac. 711.

The court gave to the jury the following instruction:

"I instruct you that in arriving at your verdict, in no event can you charge the defendant with any expense or disbursements that the plaintiff may have incurred in the building of skid roads or bridges upon any lands which are not included in the contract between the Home Security Savings Bank and the American Mill & Timber Company, and that the plaintiff is not entitled to recover for any wages for labor upon any logs or timber upon any land not included in said contract."

As we have stated in discussing another branch of the case, a part of the skid road built by the appellant was built on land not included in the contract between the Home Security Savings Bank and the American Mill & Timber Company, and that the respondent was not able to segregate very closely the proportional cost of constructing the different parts of the road. It appeared also that some 75,000 feet of logs had been cut on land not included in the contract, and that the respondent was unable to separate the cost of cutting these logs from the cost of the entire work. It is the contention of the appellant that the instruction quoted became the law of the case, binding alike upon the parties and on the jury, and because the respondent was unable to segregate the recoverable items from those not recoverable, there could have been no recovery at all, and consequently the verdict is against law.

But while the respondent was unable to segregate the particular items of cost expended in the work done on lands not included in the contract, he did testify to facts from which the segregation could be made by the jury with reasonable accuracy. He testified to the entire cost of the work and to the length of the entire skid road, and what proportion of it was constructed on land not mentioned in the contract; also to the number of feet of logs actually cut, showing that the 75,000 feet cut on land not described in the written contract

bore but a small proportion to the number actually cut. Conceding the appellant's contention, therefore, that this instruction, although erroneous, is binding as the law of the case, we still think the verdict of the jury supported by the evidence. There was evidence from which the jury could compute the damages with reasonable certainty, and this is sufficient to sustain the verdict.

The case of *Storseth v. Folsom*, 50 Wash. 456, 97 Pac. 492, is cited and relied upon by the appellant in this connection. But that case is distinguishable from the case at bar on the principle that there was there no segregation at all of the recoverable from the nonrecoverable items of damage, and hence, as the court well said, there could be no recovery other than for nominal damages. Here, as we have shown, the facts are different; the recoverable items can be segregated from those nonrecoverable, with reasonable accuracy. Moreover, there were recoverable items of damage shown by the evidence not connected with either of these matters, which alone warranted a substantial recovery. On any theory, therefore, the appellant is not entitled to a reversal on this ground.

The other assignments of error require no separate consideration. There is no substantial error in the record, and the judgment will stand affirmed.

RUDKIN, C. J., CHADWICK, and MORRIS, JJ., concur.

GOSE, J., concurs in the result.