[No. 33579. Department One. June 21, 1956.]

ANDREW BAKKE et al., *Respondents,* v. COLUMBIA VALLEY LUMBER COMPANY, INC., *et al., Appellants.*[1]

[1]Reported in 298 P. (2d) 849.

*Evans, McLaren, Lane, Powell & Beeks, J. Allan Evans, Abbott & Lant,* and *Richard Fleeson,* for appellants.

*Boone Hardin* and *T. B. Asmundson,* for respondents.

ROSELLINI, J.—This is an action to recover the alleged contract price for the use of a private logging road which crosses the property of the respondents in Whatcom county.

In 1948, the appellants, who were jointly engaged in logging operations in Whatcom county, secured from the Lervick Logging Company (hereinafter referred to as Lervick) an assignment of an easement across the respondents' property, which had been granted to Lervick by the respondent husband in an instrument which he signed, but which was not signed by his wife. The instrument, which was prepared by attorneys representing Lervick and was recorded with the auditor of Whatcom county, recited in the acknowledgment that the respondent wife was incompetent. Mrs. Bakke had been insane for thirteen years when the instrument was signed in 1942, but no guardian had been appointed.

In the spring of 1950, a guardian was appointed for the incompetent wife; and on May 24, 1950, attorneys for the guardian advised Lervick, by letter, to cease making use of the right of way and to "cancel its use" by anyone acting with its permission until such time as the necessary ar-

rangements were made with the guardian. On June 21, 1950, the attorneys representing the guardian and the respondent husband wrote to the appellants as follows:

"Attorney Boone Hardin and the undersigned represent Andrew Bakke and Bertha Bakke, who are the owners of property situate in Section 21 and 22, Township 37 North, Range 5 East of Willamette Meridian. There is a logging road across their property which is presently being used by Galbraith Logging Company and we are advised that this logging operation is being performed on your behalf. We understand that this right of way, belonging to our clients, is being used under some agreement that you have with Lervick Logging Company.

"This letter is to advise you that the Lervick Logging Company has no rights of any kind in the above right of way and that any agreement on their part is without any right whatever so far as this property is concerned.

"We are further hereby notifying you that should you desire to continue using this right of way for hauling timber, that it will be necessary to make some agreement with our clients regarding such use.

"We understand that extensive logging operations are going on at the present time and that closing this road would probably have unfortunate consequences as far as you are concerned. We are, therefore, willing that pending a satisfactory agreement you can continue to use this road with a payment for the use thereof at the rate of twenty-five cents per thousand for all logs transported over said right of way. Until the agreement can be effected, we will expect to be provided with scale sheets by the logging company covering timber shipped over this road and a weekly settlement covering such use."

The appellants made no reply to this letter but continued to use the road until August, 1953, as they had done since the assignment was obtained from Lervick in 1948. Subsequent letters from the respondents' attorneys were likewise ignored.

The term of the Bakke-Lervick easement expired December 28, 1952. On February 18, 1953, attorneys for the respondents wrote again to the appellants, demanding an accounting and payment for the use of the road at the rate of twenty-five cents per thousand board feet. Again the

appellants failed to respond, and in June, 1953, this action was commenced. After a further offer to negotiate, which was rejected, and after the appellants had notified the respondents that they did not recognize their claim to the right of way, the respondents extended a cable across the road and prevented its further use.

Between June 21, 1950, and August 21, 1953, the date the road was closed, the total footage of timber transported over the Bakke road by the appellants was 86,289,390 board feet.

The cause was tried to the court, which concluded that the easement granted to Lervick by the respondent husband was voidable and had been avoided by his wife's guardian; and that the appellants had, by their action in continuing to use the road after receipt of the respondents' letter of June 21, 1950, consented to the terms expressed therein. Judgment was entered for the respondents in the amount of $21,572.35, based upon the contract price of twenty-five cents per thousand board feet.

The appellants make no objection to the trial court's findings of fact and confine their assignments of error to the conclusions of law reached by the court.

They first contend that the letter of June 21, 1950, was improperly construed, that it contained not an offer of a contract but only an offer to enter into negotiations. They cite the case of *Coleman v. St. Paul & Tacoma Lbr. Co.,* 110 Wash. 259, 188 Pac. 532, quoting the following, taken from I Elliott on Contracts 29, § 27:

"Great care should . . . be taken not to construe the conduct, declarations or letters of a party as proposals when they are intended only as preliminary negotiations. The question in such cases is, did the offerer mean to submit a proposition, or was he only settling the terms of an agreement on which he proposed to enter, after all its particulars are adjusted? If it is intended merely to start negotiations which may subsequently result in a contract, or is intended to call forth an offer from the one to whom it is addressed, its acceptance does not consummate a contract."

■ As we said in that case, whether a writing will constitute a definite offer which the other party may turn into an obligation by acceptance, depends upon the intent and purpose of the writer.

■ We think the intent and purpose of the respondents, as expressed in the letter of June 21, 1950, is clear. They offered to allow the appellants to continue to use the road, paying twenty-five cents per thousand board feet for its use, until such time as an agreement for payment on a different basis could be reached. The offer was accepted when the appellants remained silent and continued to use the road, knowing that the respondents expected compensation on the stated basis. The rule is given in I Restatement of the Law, Contracts, 77, § 72:

"(2) Where the offeree exercises dominion over things which are offered to him, such exercise of dominion in the absence of other circumstances showing a contrary intention is an acceptance. If circumstances indicate that the exercise of dominion is tortious the offeror may at his option treat it as an acceptance, though the offeree manifests an intention not to accept."

■ The appellants insist that they manifested their intention not to accept the offer by refusing to account or to make payments. Such a conclusion is untenable. Their acceptance of the offer was indicated by their continued use of the road, knowing the terms imposed by its owner; the only intent evidenced by their failure to account was an intention not to perform their obligations under the contract. Manifestly, a failure of this type will not rescue them from liability.

■ The appellants next contend that they were entitled to use the road under the assignment which they had secured from Lervick. Granting that the instrument creating the easement was voidable as such by the wife, who did not sign it, they urge that it should be treated as a license, which the husband, as manager of the community property, was competent to grant without the consent of his wife. Conceding that there may be circumstances under which such an instrument should be construed as such in order to

do equity to the grantee, to enforce the "license" in the manner urged by the appellants would effectively deprive the respondent wife of the right given her under Rem. Rev. Stat., § 6893 [cf. RCW 26.16.040], which provides:

"The husband has the management and control of the community real property, but he shall not sell, convey or encumber the community real estate, unless the wife join with him in executing the deed or other instrument of conveyance by which the real estate is sold, conveyed, or encumbered and such deed or other instrument must be acknowledged by him and his wife: . . ."

 Where an instrument conveying an interest in community real estate is not signed by the wife, she may avoid it. *Stabbert v. Atlas Imperial Diesel Engine Co.*, 39 Wn. (2d) 789, 238 P. (2d) 1212. An easement, although an incorporeal right, is an interest in land. *Humphrey v. Krutz*, 77 Wash. 152, 137 Pac. 806. A license, on the other hand, authorizes the doing of some act or series of acts on the land of another without passing an estate in the land and justifies the doing of an act or acts which would otherwise be a trespass. *Conaway v. Time Oil Co.*, 34 Wn. (2d) 884, 210 P. (2d) 1012.

 A license differs from an easement in that it is revocable and nonassignable, and does not exclude possession, either wholly or partially by the owner of the servient tenement. Tiffany says, in his work on Real Property, Vol. 3 (3d ed.), p. 414, that if a license is intended to be irrevocable, it is intended as an easement, as it gives an interest of a permanent or quasi permanent nature.

 The argument of the appellant is: that the instrument, ineffective though it was to convey an easement, was effective as a license; that it was assignable by its express terms and irrevocable because improvements were made in reliance on it. We need not discuss the validity of the contention that a license is rendered irrevocable when improvements are made; since, if we should accept the appellants' theory that the license was irrevocable, under the principles stated above, it conveyed an interest in the land

and was therefore voidable at the instance of the respondent wife.

The trial court correctly held, therefore, that the grant of the easement was voidable by the respondent wife; that she, through her guardian, had exercised her right to avoid the same; and that the appellants, having no right to rely upon their assignment after notice of her action, were bound to pay for the use of the right of way under the terms imposed by the owners of the land.

The judgment is affirmed.

DONWORTH, SCHWELLENBACH, and OTT, JJ., concur.

HILL, J., concurs in the result.

